UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS PINGUIL., et al.,

                Plaintiffs,

-against-

WE ARE ALL FRANK, INC., et al.,

                Defendants.

17-CV-2237 (BCM)

**MEMORANDUM AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/21/2018__

**BARBARA MOSES, United States Magistrate Judge**.

      Before the Court is a proposed settlement in a wage and hour action brought by Luis Pinguil, Segundo Tacuri Quito, Jose Lema, Fausto Peralta, Neptali Peralta, Segundo Campoverde, Edison Valleso, Juan Matute, Rolando Ruiz, Bessy Morales, Sulima Betanco, Jose Pelaez, and Feliciano Martinez against We are all Frank, Inc. d/b/a Frank Restaurant; Kitchen Table, Inc. d/b/a Frank Restaurant; Just an Oven Corp. d/b/a Lil Frankie's; and Frank Prisinzano, the owner of the corporate defendants.[1] Plaintiffs, who were employed in various capacities at one or more of the restaurants operated by defendants, allege that defendants underpaid them in violation of the minimum wage and overtime requirements contained in the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., and N.Y. Labor Law (NYLL) § 652, and failed to provide wage notices or wage statements, as required by NYLL §§ 195(1) and 195(3).

## Background

      On April 4, 2018, after participating in a judicially-supervised settlement conference, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 32.) On April 24, 2018, they submitted their proposed settlement agreement (Agreement) for approval

---

[1] Plaintiffs also asserted claims against Coda di Bue, LLC d/b/a Sauce Restaurant. *See* Am. Compl. (Dkt. No. 18) ¶¶ 63, 77, 154-56. However, Coda di Bue was apparently never served with process, never filed an answer, and is not a party to the proposed settlement. *See* Ans. to Am. Compl. (Dkt. No. 22) at 1 n.1.

pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). *See* Joint Ltr. dated April 24, 2018 (Dkt. No. 34), Ex. A.

The Agreement requires defendants to pay $225,000, in installments, in full settlement of plaintiffs' claims. The first payment, in the amount of $50,000, is due within 30 days of the Court's approval of the settlement. Thereafter, 12 additional payments of $14,585.33 each are due at 30-day intervals. Ag. ¶ 1(a)-(c). As an inducement to accelerate the payments, the Agreement provides that if defendants have paid a total of $210,000 by September 15, 2018, they need not pay the remaining $15,000. *Id*. ¶ 1(d). The Agreement requires each party "to bear their own attorney's fees," but the Joint Letter requests a fee award to plaintiffs' counsel in the amount of one-third of the total settlement payment. Ag. ¶ 8; Joint Ltr. at 5. Neither the Agreement nor the Joint Letter indicates how the remaining settlement proceeds are to be allocated among the 13 plaintiffs.

The Agreement includes mutual but not entirely symmetrical releases: defendants release plaintiffs "from any and all claims that did or could have arisen out of their employment with Defendants," Ag. ¶ 7, while plaintiffs release defendants, together with a long list of affiliated persons and entities, from "all or any manner of actions, causes and causes of action . . . which plaintiffs ever had, now have, or which Plaintiffs hereafter can, shall or may have for, upon or by reason of any matter, cause of thing whatsoever without limitation arising out of Plaintiffs' employment by Defendants, their termination thereof, and/or the negotiation and or execution of this Agreement." *Id*. The Agreement contains no severability clause.

After careful consideration of the parties' submissions, the Court is unable to conclude that the terms of the Agreement are fair and reasonable. As noted above, there is no indication of how the settlement proceeds are to be allocated among the plaintiffs, preventing the Court from

2

determining whether it is fair to each of them. In addition, the proposed release to the defendants and their affiliates is overbroad and must be revised.

## Analysis

Settlements that dismiss FLSA claims with prejudice require approval of the district court or the Department of Labor. See *Cheeks*, 796 F.3d at 206. Before a district court enters judgment in such a case, it must scrutinize the settlement to determine that it is "fair and reasonable." *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In making that determination, the Court must consider the totality of circumstances, including, but not limited to the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Id.* (citing *Medley v. Am. Cancer Soc.*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

### A.   Negotiations and Financial Terms

Applying the *Wolinsky* factors (and having supervised the March 15, 2018 settlement conference attended by the parties and their counsel), I am satisfied that the settlement is the product of arms' length negotiations and that the gross settlement amount of $225,000 reasonably reflects both the strengths and the weaknesses of plaintiffs' case. Plaintiffs assert that if they prevailed on all of their claims at trial, they could recover "over $800,000" in actual and liquidated damages and statutory penalties. Joint Ltr. at 1-2. Plaintiffs recognize, however, that their calculations do not account for any sick days, days off, holidays, or other days not worked, and further acknowledge that their claims could be undermined further at trial by defendants' "substantial time and pay records," *id.* at 2, which in many instances contradict plaintiffs'

allegations as to the hours they worked and the pay they received. Thus, as plaintiffs recognize, "there would be risks to proceeding through trial, such as the dispute [over] the hours worked, the hourly wages received by each employee throughout each year, [and] the veracity of the Defendants' records." *Id.* at 2. Having reviewed portions of those records during the settlement conference, I am satisfied that the total settlement amount falls within "the plaintiff's range of possible recovery," *Wolinsky*, 900 F. Supp. 2d at 335, and is reasonable in light of the risks associated with the litigation. In addition, settlement permits each party to avoid the "anticipated burdens and expenses" of continued litigation. *Id*.

### B.    Allocation of Settlement Funds

As noted above, the parties' Joint Letter makes no mention of how the settlement funds are to be allocated among the 13 different plaintiffs. The Agreement itself is equally silent on this point. Where "the Court is unable to determine, based on the information submitted to date, whether the distribution of settlement funds among the nine plaintiffs is fair and reasonable," it cannot approve the proposed settlement. *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *3 (S.D.N.Y. June 22, 2016) (Moses, M.J.); *see also Zhao v. Hiro Sushi at Ollie's Inc*., No. 15-CV-9721 (BCM), slip op. at 5 (S.D.N.Y. Nov. 10, 2016) (Moses, M.J.) (withholding approval where court could not determine "whether the distribution of settlement funds among the six plaintiffs is fair and reasonable"); *Pena v. San Miguel Transp., Inc*., 2015 WL 1938144, at *1 (S.D.N.Y. Apr. 7, 2015) (rejecting FLSA settlement in part because of the "dearth of information supplied by the parties" as to the allocation of the settlement proceeds between the two plaintiffs).

The allocation issue "is particularly significant here because each plaintiff claims damages in a different amount." *Ortiz v. My Belly's Playlist LLC*, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017). For example, plaintiff Neptali Peralta alleges that he worked for the defendants for up to 82 hours

per week for approximately 14 years, during which time he was paid by the hour but did not receive time-and-a-half for his overtime hours, *see* Am. Compl. ¶¶ 24, 98-102, while plaintiff Sulma Betanco alleges less than nine months of relevant employment, during which she worked no more than 54 hours per week and was paid a flat weekly salary. *See id*. ¶¶ 30, 131-35. Absent some indication that the settlement proceeds will be divided among the plaintiffs in an equitable manner that recognizes these and other differences, I "cannot approve the settlement at this time" because "[t]he parties have not provided sufficient information to enable me to determine whether the proposed settlement is fair and reasonable" *Ortiz*, 283 F. Supp. 3d at 126.

### C.     Releases

The Agreement requires plaintiffs to "release and forever discharge" each defendant from all claims arising out of plaintiffs' employment, the termination thereof, "and/or the negotiation and/or execution of this Agreement." Ag. ¶ 7. Moreover, plaintiffs' release extends beyond the defendants themselves to benefit:

> any insurers of Defendants, and Defendants' respective parent corporations, stockholders, subsidiaries, affiliates, divisions, successors and assigns, their respective current and former officers, owners, directors, employees, trustees, agents, whether as individuals or in their official capacity, and each of their respective successors and assigns[.]

*Id*. Defendants, by way of contrast, are only required to release the named plaintiffs, and only from "any and all claims that did or could have arisen out of their employment with Defendants." *Id.*

As I have noted in previous cases, releases that go beyond the wage and hour claims actually asserted by the plaintiffs may be deemed fair and reasonable in settlement of an FLSA action if, among other things, they are mutual. *See*, *e.g.*, *Washington v. Elegante Servs.*, 2018 U.S. Dist. LEXIS 37638, at *7-8 (S.D.N.Y. Mar. 6, 2018) (Moses, M.J.) (collecting cases); *Pinguil v. YTF Hair Extensions Inc.*, 2018 U.S. Dist. LEXIS 26010, at *8-9 (S.D.N.Y. Feb. 15, 2018) (Moses, M.J.); *Cionca v. Interactive Realty*, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (Moses,

5

M.J.). In this case, however, the parties' releases are not mutual in breadth or extent. Moreover, the language of the release given by plaintiffs to defendants is both overbroad and vague, in that it extends the benefits of the release to a long list of affiliated persons and entities, regardless of whether those persons and entities were acting in their capacity as such. *See Washington*, 2018 U.S. Dist. LEXIS 37638, at *8 (although the parties "likely intended this language to benefit the defendants' various representatives, assigns and affiliates only in their respective capacities as such," the wording of the release "is sufficiently ambiguous that it could be used, for example, in an attempt to bar *any* claim by a plaintiff against an individual who happens to have once been a shareholder or attorney of one of the defendants"); *accord Pinguil v. YTF*, 2018 U.S. Dist. LEXIS 26010, at *9;  *Lopez v. Poko-St. Anns L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (Moses, M.J.). So too here: as written, the release contained in the Agreement could be used to bar any employment-related claim against any of the "current and former officers, owners, directors, [or] employees" of any of the defendant corporations, whether or not those individuals were acting in privity with defendants or even in their capacity as officers, owners, directors, or employees of any defendant.

In order to pass muster under *Cheeks*, the release "should unambiguously extend only to persons or entities acting on behalf of or in privity with defendants themselves, and as to such persons or entities must be limited to claims arising from actions taken in their capacity as such." *Pinguil v. YTF*, 2018 U.S. Dist. LEXIS 26010, at *9; *accord Washington*, 2018 U.S. Dist. LEXIS 37638, at *8. Second, the releases must be symmetric (except for differences related to the absence of any corporate plaintiffs). *Washington*, 2018 U.S. Dist. LEXIS 37638, at *8. Thus, if defendants' "assigns" and "agents" are to be released (acting in their capacity as such), so too must defendants' release extend to any "assigns" or "agents" of plaintiffs.

**D.     Attorney Fees**

Plaintiffs' counsel report that they have incurred $756 in costs in connection with this action: $400 for filing the complaint, and the remainder for service of process. Joint Ltr. at 8. Counsel's time records, submitted at my direction, reflect that they spent 149.1 hours on this case, at rates ranging from $375 per hour for partner Roman Avshalumov to $75 per hour for an unnamed paralegal, for an aggregate of $36,192.50 in fees and a total "lodestar" of $36,948.50. Joint Ltr. Ex. C (Dkt. No. 34-3), at ECF page 4.

A substantial portion of the Joint Letter is devoted to the contention, advanced by plaintiffs' counsel, that the Court should not even consider the lodestar in determining a reasonable fee award. Rather, counsel contends, the Court should approve the requested award of "1/3 of the settlement total," as agreed upon between plaintiffs and their counsel in "a retainer agreement that is reduced to writing." Joint Ltr. at 3, 5.[2] That figure will be either $75,000 or $70,000, depending on whether defendants' total settlement is discounted for prompt payment. Joint Ltr. at 7. Either figure is substantially higher than counsel's lodestar.

This Court declines the invitation to ignore plaintiffs' counsel's time records. It is true, as plaintiffs point out, that prior to *Cheeks* courts typically scrutinized such records only in class actions (to protect the interests of absent class members), when considering post-judgment fee awards, or in other situations where the fees were not negotiated between each plaintiff and that plaintiff's lawyers. Joint Ltr. at 2. It is also true that plaintiffs in non-class FLSA actions often execute contingency agreements with their lawyers, *id*. at 3, and that those agreements often provide for counsel to take one-third of any judgment or settlement obtained in the case, which

---

[2] The retainer agreement, although frequently referenced in the Joint Letter, is not attached to that or any other document on file in this action.

7

many courts in this District have approved as fair. *See*, *e.g*., *Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *4 (S.D.N.Y. Apr. 28, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit.") (collecting cases); *Cionca*, 2016 WL 3440554, at *2 ("Under the 'percentage of the fund' method, attorneys' fee awards of one third or less of the total settlement amount are generally accepted in this District."). I am skeptical, however, of plaintiffs' contention that any scrutiny of their attorneys' work in a non-class FLSA action, such as this, is unwarranted – even under *Cheeks* – because it would interfere with "plaintiffs' freedom to contract with their attorneys," *id*. at 4,[3] and would frequently result in "disadvantag[ing] Plaintiffs' attorneys, as they will either receive the lesser amount of 1/3 or the actual hours spent on the case." *Id*. at 4.

Plaintiffs mischaracterize my approach (and the approach of many other judges in this District) to fee awards in non-class FLSA actions. As explained in *Cionca*:

> A court evaluating attorneys' fees in an FLSA settlement may use either the "lodestar" method or the "percentage of the fund" method, but should be guided in any event by factors including: "(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations."

2016 WL 3440554, at *2 (quoting *Lopez v. Ploy Dee, Inc.*, 2016 WL 1626631, at *4 (S.D.N.Y. Apr. 21, 2016)). When comparing a requested contingency ("percentage of the fund") figure to the lodestar, we do not simply identify and award the lower number. Rather, we frequently use the lodestar to "cross check" a seemingly reasonable request for an award calculated as a percentage of the settlement fund. *E.g., Montalvo v. Arkar Inc.*, 2018 WL 2186415, at *2 (S.D.N.Y.

---

[3] Plaintiffs attribute this language to *Brunson v. City of New York*, 2000 WL 1876910 (S.D.N.Y. Dec. 22, 2000), which used the lodestar method to award fees to plaintiffs' counsel in connection with the pre-*Cheeks* settlement of two FLSA class actions. I have been unable, however, to find the quoted language anywhere in *Brunson*.

8

May 10, 2018). In some cases, to be sure, an examination of counsel's time records may reveal unusual circumstances or unique features suggesting that an award of one-third of the total settlement fund would be unfair to the plaintiffs. *See, e.g.*, *Velasquez v. Safi-G, Inc.*, 137 F. Supp. 3d 582, 586 (S.D.N.Y. 2015) (rejecting one-third contingency fee where, among other things, little work was done prior to settlement and "nearly half" was done "after counsel had already been paid"). In other cases, however, the same approach can – and does – result in fee awards that exceed the lodestar figure. *See*, *e.g.*, *Montalvo*, 2018 WL 2186415, at *2 (approving request for fee award of $26,424.16, calculated as 28% of the total settlement proceeds, where counsel's lodestar was $16,052.50); *Muniz v. Re Spec Corp.*, 2018 U.S. Dist. LEXIS 40353, at *12 (S.D.N.Y. Mar. 9, 2018) (Moses, M.J.) (awarding $95,700, calculated as a percentage of the settlement fund, where counsel's lodestar was $43,570).[4]

Thus, even assuming, *arguendo*, that individual FLSA plaintiffs have the same ability to negotiate legal fees as better-heeled clients (a dubious proposition, given that such plaintiffs frequently allege that they were paid less than minimum wage precisely because they lacked the skills, education, or sophistication to bargain effectively with their employers), I would continue to scrutinize counsel's time records when performing *Cheeks* reviews. Having done so here, I find

---

[4] Courts in this District, as elsewhere, recognize that lawyers working on contingency accept a risk of nonpayment with each case, and therefore may appropriately seek a premium over their lodestar when they are successful. *See Montalvo*, 2018 WL 2186415, at *2 (quoting *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014)) (noting that the fee awarded represented a 1.65 multiplier over counsel's lodestar, which "should be sufficient compensation for the risk associated with contingent fees in FLSA cases"). Courts also recognize that efficiency should not be penalized where, as here, it has produced a fair result. *See Hyun v. Ippudo USA Holdings*, 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting *McDaniel v. Cnty. of Schenectady,* 595 F.3d 411, 418 (2d. Cir. 2010)) (finding that "the percentage method . . . avoids the lodestar method's potential to 'create a disincentive to early settlement'").

nothing in those records that would render the requested one-third fee award unfair. However, I will limit the award to $70,000, or one-third of the $210,000 that defendants will pay if (as is likely) they exercise the early payment option under the Agreement. That $70,000, which is 189% of counsel's lodestar, will cover their out of pocket costs as well as their fees. Further, in order to keep the interests of plaintiffs and their counsel aligned throughout the installment payment schedule, I will limit counsel's fee award to one-third of each installment payment made by defendants. Counsel may not, in other words, retain more than 33-1/3 cents from each settlement dollar paid by defendants.

## Conclusion

For the reasons set forth above, I cannot approve the Agreement as fair and reasonable until the parties modify the releases in paragraph 7 and submit sufficient information to allow me to conclude that the settlement proceeds (net of the one-third attorney's fee) will be fairly allocated among the 13 plaintiffs. The parties are directed to submit a revised settlement agreement (or an appropriate addendum thereto) no later than **June 12, 2018**.

Dated: New York, New York
    May 21, 2018

**SO ORDERED**.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

10